# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF KANSAS

VAZIRANI & ASSOCIATES FINANCIAL, LLC, )
)
      Plaintiff, ) **CIVIL ACTION**
)
v. ) No. 11-1032-MLB-KGG
)
MARK V. HEITZ and JORDAN CANFIELD, )
)
      Defendants. )

## MEMORANDUM AND ORDER

  This case comes before the court on defendants' motion to dismiss plaintiff's complaint. (Doc. 7). The motion has been fully briefed and is ripe for decision. (Docs. 8, 9, 10). Defendants' motion is granted in part and denied in part for the reasons herein.

## I. Facts

  Plaintiff Vazirani & Associates Financial, LLC ("Vazirani & Associates") is an independent marketing organization (IMO) located in Arizona that contracts to perform distribution and marketing functions for insurance companies. Anil Vazirani is the president and chief executive officer of Vazirani & Associates. Plaintiff contracted with insurance company Aviva USA ("Aviva") until January 30, 2009. Defendant Mark Heitz was and is the Vice President of Sales for Aviva and Defendant Jordan Canfield was employed by AmerUs Aviva Annuity Group during the relevant time period. Defendants reside in Topeka, Kansas.

  On November 6, 2008, Canfield informed Vazirani that Aviva would be terminating plaintiff's contract and the contracts of all downline

agents. Aviva's counsel subsequently notified plaintiff in writing that Aviva was terminating its contract with plaintiff without cause effective January 30, 2009. Canfield told Vazirani that Aviva had received complaints about his business practices from the other agents. On March 20, Aviva's counsel sent a letter to Vazirani stating that the termination was due to a deferred annuity sales bubble and the desire to focus on core marketing groups and producers. After resigning from Aviva, Canfield contracted with Advisors Excel, LLC, a Kansas limited liability company founded by a group of men who were fraternity brothers with Heitz. Advisors Excel is a competitor of plaintiff.

Plaintiff alleges that Advisors Excel exploited its relationship with Heitz and obtained more advantageous commission splits and more support from Aviva than other IMOs. Plaintiff further alleges that Advisors Excel worked with defendants to sever the relationship between the plaintiff and Aviva to the detriment of Aviva. Of the various core annuity groups within Aviva, plaintiff's allegedly was the only contract terminated. In addition to exploiting the relationship between the companies, plaintiff also alleges that defendants' actions were improperly motivated by racial animus towards Vazirani. Plaintiff had not received any consumer complaints during the contractual relationship with Aviva and sold more than $10 million in annuity premiums. Plaintiff filed this action alleging claims of tortious interference with contract and business expectations, civil conspiracy, and aiding and abetting. Defendants move for dismissal on all claims. There is a companion case, <u>Vazirani et al. v. Heitz and Canfield</u>, No. 09-1311-MLB-KGG, which involves similar claims. By

Memorandum and Order of March 15, 2011 (Doc 62), this court granted, in part, and denied, in part, a motion to dismiss similar to that made in this case. The cases are ordered consolidated for all purposes.

**II.  Motion to Dismiss Standards: FRCP 12(b)(6)**

The standards this court must utilize upon a motion to dismiss are well known. To withstand a motion to dismiss for failure to state a claim, a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face. Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007)). All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to plaintiff. Archuleta v. Wagner, 523 F.3d 1278, 1283 (10th Cir. 2008). Conclusory allegations, however, have no bearing upon this court's consideration. Shero v. City of Grove, Okla., 510 F.3d 1196, 1200 (10th Cir. 2007). In the end, the issue is not whether plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claims. Beedle v. Wilson, 422 F.3d 1059, 1063 (10th Cir. 2005).

**III. Analysis**

Defendants move to dismiss plaintiff's complaint on the basis that it fails to state a claim and that plaintiff's tortious interference claim is time-barred. A federal court sitting in diversity jurisdiction must apply the substantive law of the state in which it sits, including that state's choice-of-law rules. See ORI, Inc. v. Lanewala, 147 F. Supp.2d 1069, 1078 n. 9 (D. Kan. 2001). Plaintiffs have alleged tort claims against defendants. The Kansas Supreme Court has held that the law of the state where the tort occurs

-3-

controls. See Lemons v. Lewis, 963 F. Supp. 1038, 1050 (D. Kan. 1997)(citing Ling v. Jan's Liquors, 237 Kan. 629, 635, 703 P.2d 731, 735 (1985)). All of the acts alleged by plaintiff occurred in the state of Arizona. Accordingly, Arizona law controls.

### A. Tortious Interference[1]

Plaintiff alleges that defendants tortiously interfered with both the Aviva contract and the plaintiff's business expectancies with its agents and customers. To prevail on these claims, plaintiff must establish the following: 1) the existence of a valid contractual relationship or business expectancy; 2) interferer's knowledge of the relationship or expectancy; 3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and 4) resultant damage to the party whose relationship or expectancy has been disrupted. Neonatology Associates, Ltd. v. Phoenix Perinatal Associates, Inc., 216 Ariz. 185, 187, 164 P.3d 691, 693-64 (Ariz. Ct. App. 2007). Defendants respond that plaintiff's claims are barred by the applicable statute of limitations.

Defendants assert that plaintiff's tortious interference claims accrued in November 2008, when plaintiff was informed that Aviva would be terminating the contractual relationship. Plaintiff argues that the injury did not occur until the actual termination of the Aviva relationship, at the earliest January 30, 2009. Even though Arizona

---

[1] Although tortious interference with contract and tortious interference with business expectancy are separate causes of action, the elements to prove each are virtually identical. See Southern Union Co. v. Southwest Gas Corp., 180 F. Supp.2d 1021, 1047 n. 41 (D. Ariz. 2002). Thus, the analysis for both will be combined in this subsection. Defendants did not raise a statute of limitations defense in case No. 09-1311.

provides the substantive law in this case, Kansas generally "applies its own statutes of limitations to actions before it." Muzingo v. Vaught, 18 Kan. App. 2d 823, 859 P.2d, 977, 979 (1993). Under K.S.A. 60-513(4), the statute of limitations for tortious interference claims is two years.

In Kansas, a cause of action accrues "at the time of the occurrence of the act giving rise to the cause of action, unless the fact of injury is not reasonably ascertainable." See v. Hartley, 257 Kan. 813, 820, 896 P.2d 1049, 1054 (Kan. 1995). The running of the statute of limitations starts as soon as the right to maintain a legal action arises. Johnston v. Farmers Alliance Mutual Ins. Co., 218 Kan. 543, 548, 545 P.2d 312, 317 (1976). In Johnston v. Farmers Alliance Mutual Ins. Co., the Kansas Supreme Court determined that the statute of limitations began running for a terminated employee when he received notice of his termination even though his damages accrued once the termination became effective. Id. The court affirmed this decision in Whye v. City Council for the City of Topeka by holding that the cause of action accrued and the statute of limitations began to run when an employee tendered resignation or announced plans to retire and not when the resignation became effective. 278 Kan. 458, 464, 102 P.3d 384, 387 (2004).

Aviva notified plaintiff of the termination of their contractual relationship, as well as the termination of all contracts with downline agents, during the November 6, 2008 call. Although the injury did not occur until the termination became effective on January 30, 2009, the injury was reasonably ascertainable to plaintiff in November because the damages associated with the contract terminations

were known at that time. The statute began to run as soon as plaintiff received notice of termination and could maintain a legal action, not when the termination became effective. Because this action was filed on January 28, 2011 and the two year statute of limitations ended on November 6, 2010, plaintiff's claim of tortious interference is time-barred. Therefore, defendants' motion to dismiss plaintiff's claim of tortious interference is granted.

**B.   Civil Conspiracy**

A civil conspiracy claim requires an agreement between two or more persons to accomplish an underlying tort. <u>Wells Fargo Bank v. Ariz. Laborers, Teamsters and Cement Masons Local No. 395 Pension Trust Fund</u>, 201 Ariz. 474, 498, 38 P.3d 12,36 (2002). Plaintiff claims defendants conspired to tortiously interfere with plaintiff's Aviva contract and plaintiff's business expectancies. Defendants respond that because the tortious interference claim fails based on the statute of limitations, the civil conspiracy claim must also fail because there is no underlying tort. Here, unlike <u>Wells Fargo</u>, the court dismissed the underlying tort because it was time barred and not because the alleged tort had not been accomplished. The court has not decided the tortious interference claim on the merits. Although the claim is dismissed because of the statute of limitations, the underlying tort might still have been accomplished and a claim for civil conspiracy could still exist.[2]

Defendants also argue that plaintiff did not plead facts making

---

[2]If the court had considered the plaintiff's claim for tortious interference on the merits, it would have denied defendants' motion to dismiss for failure to state a claim based on the analysis in Case No. 09-1311-MLB, Doc. 62.

it plausible that defendants entered into an agreement to tortiously interfere with the contract or business expectancies. A civil conspiracy claim requires an agreement between two or more persons to accomplish an unlawful purpose or a lawful purpose by unlawful means. See Dawson v. Withycombe, 216 Ariz. 84, 163 P.3d 1034, 1053 (Ariz. Ct. App. 2007). A plaintiff does not need to show an express agreement to prevail on a civil conspiracy claim; however, there must be at least a tacit understanding and a plaintiff must allege specific facts that support the inference of an agreement. S. Union Co. v. Sw. Gas Corp., 165 F. Supp.2d 1010, 1021 (D. Ariz. 2001). A conspiracy "may sometimes be inferred from the nature of the acts done, the relations of the parties, the interests of the alleged conspirators, and other circumstances." Id.

After a review of the allegations, the court finds that plaintiff has alleged sufficient facts to support an inference of an agreement between defendants and Advisors Excel. Plaintiff has alleged defendants purposefully deteriorated their relationship with Aviva and bolstered the relationship of Aviva and Advisors Excel for the purpose of gaining agents from other IMOs and SFS. Plaintiff has further alleged that an agreement was made towards the end of 2008.

At this stage in the pleadings, defendants' motion to dismiss the conspiracy claim is denied.

**C. Aiding and Abetting**

Plaintiff alleged that defendants aided and abetted one another in the tortious interference with a contract and business expectancy. Defendants respond that the underlying tort fails because of the statute of limitations and that allegations are not sufficient to

state a claim. This case is again distinguished from Wells Fargo because the tort was time barred and not dismissed because the tort was never accomplished. Because this court has not decided the tortious interference claim on the merits, the aiding and abetting claim does not fall because the underlying tort is time-barred.

Claims of aiding and abetting tortious conduct must establish the following: 1) a primary tortfeasor committed a tort that caused injury to the plaintiff; 2) the defendant knew that the primary tortfeasor's conduct constituted a tort; and 3) the defendant substantially assisted or encouraged the primary tortfeasor in accomplishing the tort. Wells Fargo, 201 Ariz. 474 at 485, 38 P.3d 12 at 23. After a review of the allegations, the court finds that plaintiff has alleged sufficient facts to support its aiding and abetting claim. Plaintiff has alleged defendants improperly interfered with the Aviva contracts and relationships with downline producers and customers, that defendants lied about the termination of the Aviva contracts and defendants exploited their relationship with Advisors Excel to receive preferential treatment and later employment with plaintiff's competitor. The court finds that the facts are sufficient to state a claim of aiding and abetting.

At this stage in the pleadings, defendants' motion to dismiss the aiding and abetting claim is denied.

## IV. Conclusion

Defendants' motion to dismiss is granted in part and denied in part. (Doc. 7). Defendants' motion to dismiss plaintiff's claim of tortious interference is granted. Defendants' motion to dismiss plaintiff's claim of conspiracy and aiding and abetting is denied.

A motion for reconsideration of this order is not encouraged. The standards governing motions to reconsider are well established. A motion to reconsider is appropriate where the court has obviously misapprehended a party's position or the facts or applicable law, or where the party produces new evidence that could not have been obtained through the exercise of reasonable diligence. Revisiting the issues already addressed is not the purpose of a motion to reconsider and advancing new arguments or supporting facts which were otherwise available for presentation when the original motion was briefed or argued is inappropriate. <u>Comeau v. Rupp</u>, 810 F. Supp. 1172 (D. Kan. 1992). Any such motion shall not exceed three pages and shall strictly comply with the standards enunciated by this court in <u>Comeau v. Rupp</u>. The response to any motion for reconsideration shall not exceed three pages. No reply shall be filed.

IT IS SO ORDERED.

Dated this   8th   day of June 2011, at Wichita, Kansas.

s/ Monti Belot<br>
Monti L. Belot<br>
UNITED STATES DISTRICT JUDGE